UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-CR-152-FL-RJ

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **GOVERNMENT'S OPPOSITION** |
| v. | ) | **TO DEFENDANT'S MOTION TO** |
| | ) | **DISMISS FOR IMPROPER VENUE** |
| ANIBAL RIOS LAVIAS | ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, respectfully opposes Defendant's motion to dismiss for improper venue. For the reasons stated below, the Court should deny the motion because Defendant's criminal wrongdoing included essential acts he undertook within the Eastern District of North Carolina.

## PROCEDURAL BACKGROUND

On June 24, 2025, a federal Grand Jury returned a two-count indictment against Defendant for naturalization fraud charges under 18 U.S.C. § 1425(a). D.E. 1. The indictment alleges that Defendant knowingly made false statements regarding criminal conduct under oath and penalty of perjury in his application to naturalize as a United States citizen. *Id.* Defendant was arrested federally on July 15, 2025, and the motion to dismiss followed on September 18, 2025. D.E. 20.

## FACTUAL BACKGROUND

Defendant is a native of Mexico by birth in 1995. When Defendant was ten years old, his American stepfather petitioned for Defendant to become a lawful permanent resident of the United States, and the petition was granted. Defendant

eventually fathered four children, all of whom were born in the United States. Relevant to this case, Defendant's oldest child was born in 2013 and has the initials L.S.R.

On October 3, 2017, in Alamance County, North Carolina, Defendant signed and subsequently submitted a Form N-400, Application for Naturalization, to U.S. Citizenship and Immigration Services ("CIS"). Question 14.E. of the N-400 asks, "Were you EVER involved in any way with any of the following: . . . [f]orcing, or trying to force, someone to have any kind of sexual contact or relations?" Defendant checked the box corresponding with "No." Question 22 of the N-400 asks, "Have you EVER committed, assisted in committing, or attempted to commit, a crime or offense for which you were NOT arrested?" Defendant again checked the box for "No."

Part 13 of the N-400 contains the applicant's certification and signature block. The text immediately above the block reads, "I certify, under penalty of perjury, that I provided or authorized all of the information in my application, I understand all of the information contained in, and submitted with, my application, and that all of this information is complete, true, and correct." Defendant signed the N-400 and submitted it to CIS via his attorney.

Importantly, the application's instructions included the following notice, alerting Defendant that should he apply for an immigration benefit, *i.e.*, naturalization, a fingerprinting, or "biometrics," appointment may be required:

2

**Biometrics Services Appointment.** USCIS may require that you appear for an interview or provide fingerprints, photograph, and/or signature at any time to verify your identity, obtain additional information, and conduct background and security checks, including a check of criminal history records maintained by the Federal Bureau of Investigation (FBI), before making a decision on your application. After USCIS receives your application and ensures it is complete, we will inform you in writing if you need to attend a biometric services appointment. If an appointment is necessary, the notice will provide you the location of your local or designated USCIS Application Support Center (ASC) and the date and time of your appointment or, if you are currently overseas, instruct you to contact a U.S. Embassy, U.S. Consulate, or USCIS office outside the United States to set up an appointment.

If you are required to provide biometrics, at your appointment you must sign an oath reaffirming that:

1. You provided or authorized all information in the application; and

2. You reviewed and understood all of the information contained in, and submitted with, your application; and

3. All of this information was complete, true, and correct at the time of filing.

If you fail to attend your biometric services appointment, USCIS may deny your application.

On December 1, 2017, CIS sent Defendant the notice regarding the requirement that he appear for fingerprinting:

To process your application, USCIS must capture your biometrics and have your fingerprints cleared by the FBI. The photo taken may be used on your naturalization certificate. PLEASE APPEAR AT THE BELOW APPLICATION SUPPORT CENTER AT THE DATE AND TIME SPECIFIED. If you are unable to do so, complete the bottom of this notice and return the entire original notice to the address below. RESCHEDULING YOUR APPOINTMENT WILL DELAY YOUR APPLICATION. IF YOU FAIL TO APPEAR AS SCHEDULED BELOW OR FAIL TO REQUEST RESCHEDULING, YOUR APPLICATION WILL BE CONSIDERED ABANDONED.

| APPLICATION SUPPORT CENTER | PLEASE READ THIS ENTIRE NOTICE CAREFULLY. |
|---|---|
| USCIS RALEIGH | DATE AND TIME OF APPOINTMENT |
| 10954 Chapel Hill Road Suite 101 | 12/21/2017 |
| Morrisville NC  27560 | 12:00PM |

WHEN YOU GO TO THE APPLICATION SUPPORT CENTER TO HAVE YOUR BIOMETRICS TAKEN, YOU MUST BRING:
1. THIS APPOINTMENT NOTICE and
2. PHOTO IDENTIFICATION. Naturalization applicants must bring their Alien Resident Card. All other applicants must bring a passport, driver's license, national ID, military ID, or State-issued photo ID. If you appear without proper identification, you will not be fingerprinted.

NOTE: When you appear at the USCIS Application Support Center, you will reaffirm, under penalty of perjury, that you reviewed and understood your application, petition, or request and all supporting documents, that the answers were provided by you, and that the contents of your application, petition, or request are complete, true, and correct. If you were assisted in completing your application, petition, or request, you will be reaffirming that the person assisting you also reviewed the Acknowledgement of Appointment at USCIS Application Support Center with you.

NOTE: USCIS will use your fingerprints to check the criminal history records of the FBI. You may obtain a copy of your own FBI identification record using the procedures outlined within Title 28 C.F.R., Section 16.32. The procedures to change, correct, or update your FBI identification record are outlined within Title 28, C.F.R., Section 16.34.

*See* Exhibit 1, CIS Notice. The notice directed Defendant to attend an appointment on December 21, 2017, at his local CIS Application Support Center in Wake County, North Carolina, where his fingerprints would be taken. *See id.* The notice informed

Defendant that his fingerprints would be used by the FBI to review his criminal history. *See id.* The notice also told Defendant that, at the appointment, "you will reaffirm, under penalty of perjury," that the contents of the naturalization application, including his answers and exhibits, were still "complete, true, and correct." *Id.* Lastly, the notice explained that if Defendant did not appear for the appointment (without having sought to reschedule it, if needed), his naturalization application would "be deemed abandoned." *Id.* As directed, on December 21, 2017, Defendant appeared in person at the CIS Application Support Center in Wake County, North Carolina, and completed these requisite steps for naturalization.

On April 16, 2018, in Durham County, North Carolina, Defendant appeared at another CIS office for a naturalization interview. At the beginning of the interview, Defendant was placed under oath by a CIS officer to review his responses on the N-400. During the interview, Defendant swore that his responses on the N-400 were still true and correct. At the conclusion of the interview, Defendant electronically signed Part 16 of his naturalization application in the presence of the officer, thereby swearing under penalty of perjury again that the contents were still true and correct at the time of his interview. However, as explained further below, Defendant knew—at least by this time—that the answers cited above were false.

On May 4, 2018, in Durham County, North Carolina, Defendant appeared in person at the same CIS office and completed a Form N-445 for the Naturalization Oath Ceremony. Question 3 of the N-445 asks, "Since your interview, have you knowingly committed any crime or offense, for which you have not been arrested?"

4

Defendant marked the box corresponding with "No." Defendant then signed the N-455, thereby asserting that his responses on the N-400 were still true and correct and submitted it to CIS. Immediately thereafter, Defendant participated in a Naturalization Ceremony. Defendant was granted U.S. citizenship and issued a Certificate of Naturalization bearing his name, photograph, and certificate number.

On or around February 27, 2023, law enforcement was informed that Defendant's child, L.S.R., had disclosed that Defendant had been molesting and sexually assaulting her since around the age of five. On March 2, 2023, in Alamance County, North Carolina, Defendant was arrested and charged with sex offense with child by adult. On August 7, 2023, in the Superior Court of North Carolina in Alamance County, a grand jury returned two indictments against Defendant that charged him with a total of five counts of sex offense with child by adult, each in violation of North Carolina General Statute § 14-27.28.

On March 19, 2024, in the Superior Court of North Carolina in Alamance County, Defendant was convicted of all five counts of sex offense with child by adult as charged in the indictments. Pursuant to the judgment and transcript of Defendant's guilty plea, Defendant confessed to having committed sex offenses against L.S.R. from February 25, 2018, through January 1, 2019 (two of the counts), and February 1, 2022, through February 26, 2023 (three of the counts). Defendant was sentenced to 300-420 months in prison and ordered to register as a sex offender. He is currently serving an active state sentence with an expected release date in 2049.

Accordingly, the evidence, including Defendant's admissions, reflects that at least by the time he appeared for his naturalization interview on April 16, 2018, Defendant had begun sexually abusing his minor child, which he continued to do through the date he naturalized and beyond. Thus, his assertions to the contrary, which he made under oath and penalty of perjury in the naturalization process, were false.

## ARGUMENT

### DEFENDANT'S CONDUCT IN THE EASTERN DISTRICT OF NORTH CAROLINA WAS ESSENTIAL TO HIS VIOLATIONS OF 18 U.S.C. § 1425(a)

Under the United States Constitution, criminal defendants have a right to be tried in the district where the crime was committed. *United States v. Sterling*, 860 F.3d 233, 240 (4th Cir. 2017) (citing U.S. Const. art. III, § 2, cl. 3). Venue is proper only in a district in which essential conduct took place. *Id.* However, if essential criminal conduct takes place in more than one district, the government may prosecute those offenses in any district in which such offense began, continued, or was completed. *Id.*; *see also* 18 U.S.C. § 3237(a). However, acts that are merely preparatory to the underlying offense do not provide a basis for venue. *Id.* at 241 (citing *United States v. Ramirez*, 420 F.3d 134, 144 (2d Cir. 2005)).

In this case, Defendant's scheme of wrongdoing took place in both the Middle and Eastern Districts of North Carolina; thus, either District would be a proper venue to bring the charges. Contrary to the arguments in Defendant's motion to dismiss, Defendant's completion of his biometrics appointment in Wake County—which constituted a mandatory part of his naturalization application process—was not

6

merely "preparatory." In fact, it was essential conduct for the naturalization fraud he committed under 18 U.S.C. § 1425(a).

To determine whether an action qualifies as an "essential conduct element," the Court should analyze the key verbs or actions that are prohibited by the statute being prosecuted, as well as other informative aspects of the charge. *Sterling*, 860 F.3d at 241 (citing *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279-80 (1999)). Then, the Court can determine where such essential conduct was committed and, thus, where venue is proper. *Id.* Section 1425 states that "[w]however knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization of citizenship . . ." will be punished under the statute. The terminology "procures or attempts to procure" implicates the entire naturalization process; because the taking of biometrics is a necessary step in that process, it was a necessary element to Defendant's *procurement* or *attempt to procure* naturalization.

To be sure, fingerprinting is required because it is key to establishing an applicant's identity and his eligibility for naturalization, as it allows federal law enforcement to review the applicant's criminal history. *See* 8 C.F.R. § 103.2(b)(9). "An applicant for naturalization bears the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character. This includes the period between the examination and the administration of the oath of allegiance." 8 C.F.R. § 316.10(a)(1). The "good moral character" assessment includes a review of an applicant's criminal history to

determine whether any criminal wrongdoing would render him ineligible. *See* 8 U.S.C. § 1101(f).

In fact, the "good moral character" determination is largely informed by the criminal convictions revealed by the applicant's criminal background check, which is only made reliably possible by taking the applicant's fingerprints. *See* 8 C.F.R. § 335.1 ("Investigation of applicant: Subsequent to the filing of an application for naturalization, [CIS] shall conduct an investigation of the applicant. The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, . . . for at least the five years immediately preceding the filing of the application."). And the next step in the process—the examination, or interview, of the applicant—will not occur until criminal background checks are complete. Section 335.2(b) of Title 8 of the Code of Federal Regulations specifically states:

Completion of criminal background checks before examination:

USCIS will notify applicants for naturalization to appear before a USCIS officer for initial examination on the naturalization application *only after* the USCIS has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed. A definitive response that a full criminal background check on an applicant has been completed includes:

(1) Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or a criminal record;

(2) Confirmation from the Federal Bureau of Investigation that an applicant has an administrative or a criminal record; or

(3) Confirmation from the Federal Bureau of Investigation that the fingerprint data submitted for the criminal background check has been rejected.

8 C.F.R. § 335.2(b)(1)-(3) (emphasis added).

The biometrics appointment is further critical because it is yet another point in time where, if the applicant wants to proceed with his application, he must affirm that the answers he provided in his naturalization application are still complete, true, and correct. *See* Ex. 1. When Defendant appeared for his biometrics appointment, he digitally signed and attested that his previous responses were still true and correct. If he had not done so, his application would have been "deemed abandoned," and the process would have ceased. *Id.* However, Defendant chose to proceed with his application and completed the required biometrics appointment.

In summary, the completion of the biometrics appointment in the Eastern District of North Carolina, including the taking of his fingerprints and his reaffirmation of the contents of his naturalization application, was not incidental or "preparatory" to Defendant's violations of 18 U.S.C. § 1425(a). It was essential conduct for his "procurement" and attempted procurement of naturalization contrary to law. "The right to acquire American citizenship is a precious one . . . ," and "there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 505 (1981). Here, Defendant's requisite fingerprint appointment occurred in the Eastern District; it was mandatory if Defendant wanted to continue with the very process referenced in 18 U.S.C. § 1425(a). Defendant chose to attend and complete those steps, making

9

the Eastern District of North Carolina a proper venue for prosecuting Defendant's naturalization fraud.

## CONCLUSION

For the reasons stated above, the Court should deny Defendant's motion to dismiss for improper venue.

Respectfully submitted this 3rd day of November, 2025.

W. ELLIS BOYLE
United States Attorney

BY: /s/ Lori B. Warlick
LORI B. WARLICK
Assistant U.S. Attorney
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4882
Email: lori.b.warlick@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on this 3rd day of November, 2025, electronically filed the foregoing Opposition via the Court's CM/ECF system, which will send notice of such filing to Defendant's counsel, Sherri Alspaugh.

/s/ Lori B. Warlick
LORI B. WARLICK
Assistant U.S. Attorney
Criminal Division

11